FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
7/1/2025
CLERK'S OFFICE
AT BALTIMORE
BY O.L., DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO.** JRR-25-193 |
| v. | * | |
| | * | **(Conspiracy to Defraud the United States, 18 U.S.C. § 371; Anti-Kickback Act Violation, 41 U.S.C. §§ 8702(1) & (3) and 8707)** |
| **ROBERT FAY,** | * | |
| | * | |
| Defendant | * | |
| | * | |
| | * | |
| ****** | | |

# INFORMATION

### COUNT ONE
**(Conspiracy to Defraud the United States)**

The United States Attorney for the District of Maryland charges that:

At all times relevant to this Information,

### Background and Introduction

1. Defendant **ROBERT FAY** was a resident of Maryland and was employed as an information technology ("IT") salesman for Company 1, a value-added reseller ("VAR") of IT Products with its principal place of business in Hanover, Maryland. **FAY** focused his efforts on selling IT products to federal government end users, including to the United States Department of Defense and related entities. This included USG Agency 1, an agency of the Department of Defense.

2. USG Agency 1 regularly purchased IT solutions to operate its IT infrastructure. Such solutions, which consisted of both hardware and software products ("IT Products"), often totaled millions of dollars.

3. Co-Conspirator 1 was an on-site IT service provider at USG Agency 1. In Co-Conspirator 1's role as an on-site service provider, Co-Conspirator 1 cultivated close relationships with USG Agency 1 employees who had authority over certain procurements. Co-Conspirator 1 also often learned confidential, non-public, inside information about upcoming procurements.

4. In addition to his role as an on-site contractor, Co-Conspirator 1 also owned Company 2, a VAR located in Maryland that sold IT products to the Government.

5. Company 3 was an IT company with its principal place of business in San Jose, California. Co-Conspirator 2 was employed as a salesman for Company 3. **FAY** and Company 1 sold IT products manufactured by Company 3 to USG Agency 1.

6. Company 4, referred to herein in combination with its subsidiaries and affiliated entities, was an IT distributor headquartered in Reston, Virginia. Company 4 also submitted bids for government procurements as a VAR and sold IT Products to the United States government. Co-Conspirator 3 was employed by Company 3 as a government account representative.

7. In or around April 2020, **FAY,** Co-Conspirator 1, and their other co-conspirators agreed that **FAY** would submit bids on behalf of Company 1 as a front for Company 2, hiding Company 2's involvement from USG Agency 1. The co-conspirators further agreed to pay kickbacks to Co-Conspirator 1 and Company 2, utilizing Co-Conspirator 1's access to inside information and influence and in exchange for favorable treatment on procurements by USG Agency 1.

8. **FAY** knew that Co-Conspirator 1 was employed as an on-site contractor at USG Agency 1 and that his involvement in procurements presented a conflict of interest.

9. **FAY** knew at the time he provided the kickback payments to Co-Conspirator 1 that such payments were prohibited.

10. **FAY** knew that USG Agency 1 would not have awarded **FAY** any contracts had USG Agency 1 known of the kickback relationship between **FAY**, Co-Conspirator 1, and the rest of their co-conspirators.

11. **FAY** and Co-Conspirator 1 therefore knew that it was important that he and his co-conspirators hide the true nature of the relationship between **FAY** and Co-Conspirator 1.

## The Conspiracy

12. From at least as early as April 2020 and continuing through at least as late as September 2022, in the District of Maryland and elsewhere, the Defendant,

**ROBERT FAY,**

did knowingly and willfully combine, conspire, confederate and agree with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and other co-conspirators known and unknown to the United States Attorney, to commit an offense against the United States, namely:

   a. to provide, attempt to provide, and offer kickbacks to Co-Conspirator 1 and Company 2, in exchange for favorable treatment on USG Agency 1's procurement of Company 3's products, which were sold by **FAY** and Company 1, and distributed by Company 4; and

   b. to include the amount of the kickbacks in the contract prices at which Company 1 sold to USG Agency 1, thereby increasing the amount that Company 1 charged the Department of Defense,

contrary to Title 41, United States Code, Section 8702 and 8707.

3

### The Purpose of the Conspiracy

15. It was the purpose of the conspiracy for **FAY** and his co-conspirators to use Co-Conspirator 1's close relationships and access to inside information at USG Agency 1 to improperly obtain favorable treatment on IT procurements that Company 1 sold to USG Agency 1, which included products made by Company 3, and which were distributed by Company 4.

*Manner And Means*

16. The manner and means by which the Defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, but were not limited to, the following:

   a. **FAY**, Co-Conspirator 2, and Co-Conspirator 3 provided kickbacks to Co-Conspirator 1 and Company 2 to influence USG Agency 1's award of IT procurements.

   b. Co-Conspirator 1 ensured that USG Agency 1 purchased Company 3's products, which were sold to USG Agency 1 by Company 1 and were distributed by Company 4.

   c. **FAY**, Co-Conspirator 2, and Co-Conspirator 3 increased the amount of Company 1's bid price to USG Agency 1 to include the kickbacks.

   d. **FAY** and Company 1 hid the kickback payments to Co-Conspirator 1 and Company 2 from USG Agency 1 by not identifying the payments on Company 1's invoices to USG Agency 1 even though the payments were included in the amount that USG Agency 1 paid Company 1.

e. **FAY** coordinated the kickback payments by directing Co-Conspirator 3 to include the payments to Co-Conspirator 1 and Company 2 through checks issued by Company 4.

f. Co-Conspirator 1 provided **FAY**, Company 1, Co-Conspirator 2, Co-Conspirator 3, Company 3, and Company 4 favorable treatment on USG Agency 1 procurements, including by: (i) convincing USG Agency 1 employees to purchase products manufactured by Company 3; (ii) ensuring that **FAY** and Company 1, were invited to bid on IT procurements; and (iii) providing confidential, non-public inside information about upcoming procurements, ensuring that Company 1 won the procurements, which were distributed to Company 1 by Company 4.

g. **FAY**, Co-Conspirator 2 and Co-Conspirator 3, in exchange for this favorable treatment, paid kickbacks to Co-Conspirator 1 and Company 2 totaling approximately $1.9 million.

*Overt Acts*

17. In furtherance of the conspiracy and to accomplish its objects, the following acts were committed in the District of Maryland, and elsewhere:

a. On or about September 15, 2020, after coordinating with Co-Conspirator 1 regarding an upcoming procurement of IT products at USG Agency 1, **FAY** emailed Co-Conspirator 3 and asked, "Does this ring a bell with you?"

b. On or about September 16, 2020, Co-Conspirator 3 emailed Co-Conspirator 1 and another co-conspirator regarding the upcoming procurement, requesting that Co-Conspirator 1 provide Co-Conspirator 3 with a "customer facing quote."

c. On or about September 17, 2020, after learning that Company 1, and not Company 2, would instead provide a customer facing quote, Co-Conspirator 3 emailed **FAY** non-public competitor cost information so that **FAY** would "know what the ceiling price is for the entire [order]."

d. On or about September 17, 2020, after the email exchange above, **FAY** emailed Co-Conspirator 3 requesting that he allocate profit to Company 1 and a kickback to Co-Conspirator 1, writing that he "[w]ant[ed] to be sure there's an equitable split between [Co-Conspirator 1] and [Company 1]."

e. On or about September 23, 2020, after USG Agency 1 awarded the procurement to Company 1, Co-Conspirator 2 emailed Co-Conspirator 1, thanking him regarding the procurement awarded to **FAY** and Company 1, "THANK YOU [Co-Conspirator 1]!!!! Team work makes the dream work!!!"

f. On or about March 25, 2021, following the coordination between **FAY**, Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3 regarding the amount of the kickback to be paid to Co-Conspirator 1, Company 4 included in a check to Company 2 a kickback payment of $443,282.

18 U.S.C. § 371.

## COUNT TWO
**(Anti-Kickback Act Violation)**

The United States Attorney further charges that:

1. The allegations in Paragraphs 1 through 13, and 15 through 17 are incorporated herein by reference.

2. On or about March 25, 2021, in the District of Maryland and elsewhere, the Defendant,

**ROBERT FAY,**

knowingly and willfully provided, attempted to provide, and offered a kickback, that is, money, fees, commissions, credits, gifts, gratuities, things of value, and compensation that is provided, directly and indirectly, to a prime contractor employee, for the purpose of improperly obtaining and rewarding favorable treatment in connection with a prime contract; namely, **FAY** (i) provided a $443,282 kickback to Co-Conspirator 1 for the purpose of improperly obtaining favorable treatment in connection with USG Agency 1's award of a contract for the purchase of IT products from Company 1, and (ii) included the amount of the kickback in the contract that Company 1 charged USG Agency 1.

41 U.S.C. §§ 8702(1)&(3) and 8707

| | |
|---|---|
| GAIL SLATER<br>Assistant Attorney General | KELLY O. HAYES<br>United States Attorney |
| *[signature]*<br>MICHAEL M. SAWERS<br>ZACHARY D. TROTTER<br>ELIZABETH H. FRENCH<br>Trial Attorneys<br>Antitrust Division<br>U.S. Department of Justice<br>Washington Criminal Section<br>450 5th Street, NW<br>Washington, D.C. 20530 | *[signature]* |

Date: 7/1/2025

8